UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
LEONARD OLIVER,

    Petitioner,

          - against -

ROBERT KIRKPATRICK, Superintendent

    Respondent.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
06-CV-6050 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Pending before this Court is Leonard Oliver's *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Oliver challenges his conviction in the Supreme Court of the State of New York, Kings County, on two counts of assault in the first degree under New York Penal Law ("N.Y.P.L.") §§ 120.10(1) and (3), one count of gang assault in the second degree under N.Y.P.L. § 120.06, and one count of manslaughter in the second degree under N.Y.P.L. § 125.15(1). The trial court sentenced Oliver to concurrent terms of ten, five, and three-and-one-half years imprisonment for the intentional assault, reckless assault, and gang assault, respectively, and to a further consecutive term of five to fifteen years imprisonment for the manslaughter.

In his petition, Oliver asserts that he was denied his due process right to a fair trial when the trial court admitted testimony that petitioner and his co-defendant were affiliated with a gang.

For the reasons set forth below, the petition is DENIED.

## BACKGROUND

### I.    Manslaughter and Assaults

On April 15, 2002, at approximately 8:00pm, Oliver, his friend K.C.[1], and others stood in front of a store on the corner of Newkirk Avenue and Flatbush Avenue in Brooklyn, New York. (Trial Tr. 989:24-90:4.) Three men approached the group; one intentionally bumped Oliver as he entered the store, and then again as he left. (Trial Tr. 991:11-92:8.) Oliver responded, "Watch where the fuck you going." (Trial Tr. 992:9-10.) Roughly half an hour later, the same three men returned, and the same individual again bumped Oliver. (Trial Tr. 992:19-93:9.) Oliver and his companions confronted the men, and the man who bumped Oliver pulled out a gun and waved it at the crowd, which quickly dispersed. (Trial Tr. 994:1-95:10.) Shortly thereafter, Oliver, K.C., and Michael Williams convened in front of a building where they regularly hung out. Oliver, upset about the earlier incident, asked Williams to "pass me the toast," referring to a gun. (Trial Tr. 995:16-96:21.) Oliver and Williams entered the building, where Williams handed Oliver a chrome gun. (Trial Tr. 998:18-99:7.)

Oliver and K.C., without Williams, then walked towards K.C.'s home, and came across two individuals, E.W. and B.P., who were not involved in the original altercation. (Trial Tr. 611:1-12:25, 1001:15-1002:1.) B.P. had exchanged dirty looks with K.C. in the past. (Trial Tr. 999:19-1001:4.) An argument ensued before E.W. and B.P. walked away. (Trial Tr. 1002:13-04:20.) Oliver and K.C. then met up again with Williams, and the three walked back to where E.W. and B.P., now joined by several friends, stood. (Trial Tr. 1005:17-25.) A witness observed

---

[1] Consistent with Federal Rule of Civil Procedure 5.2(a), where the record indicates that an individual was a minor at the time of the incidents underlying petitioner's conviction, this Court will identify him by his initials. *See, e.g.*, *Andersen v. Rochester City School Dist.*, No. 11–1955–CV, 2012 WL 1632581, at *1 n.2(2d Cir. May 10, 2012); *In re S.E.O.*, No. 12 Civ. 2390(LTS), --- F. Supp. 2d ----, 2012 WL 2026443, *1 n.1 (S.D.N.Y. June 5, 2012).

a gun protruding from Williams's pocket. (Trial Tr. 1094:15-20.) K.C. resumed arguing with B.P., and told Williams that he wanted to fight. Williams replied, "Do you, go ahead," (Trial Tr. 1007:4-22), or "Do what you got to do," (Trial Tr. 134:12). K.C. punched B.P. and he fell to the ground. (Trial Tr. 1008:2-11.) While K.C. was on top of B.P., K.C. heard three gunshots. (Trial Tr. 1008:20-24.) When K.C. got up, he saw Oliver wrestling with Everton King, who was not a party to the original argument. (Trial Tr. 1009:9-24.) K.C. saw a gun fall. (Trial Tr. 1010:7-8.) Williams grabbed the gun - - linked to Oliver in trial testimony - - off the ground, and all three ran. (Trial Tr. 1011:7-9.)

King testified at trial that he had seen Oliver pull a gun from his waistband and fire two shots toward B.P. (Trial Tr. 136:2-9.) He testified that he grabbed Oliver in an attempt to stop him from shooting again, and that Oliver shot him in the stomach during the struggle. (Trial Tr. 136:14-25.) E.W. also suffered a gunshot wound to the stomach, (Trial Tr. 622:6-16), and a bystander, Christopher Gentles, died from a bullet wound. (Trial Tr. 53:11-20.) B.P. suffered a broken jaw. (Trial Tr. 1242:9-1.)

Based on interviews conducted at the scene, police began looking for Oliver. (Trial Tr. 391:25-394:19.) Oliver was apprehended shortly after midnight on April 21, 2002. (Trial Tr. 396:16-20.) Later that afternoon, a detective read Oliver his *Miranda* rights, which Oliver waived. (Trial Tr. 414:5-8.) Oliver then provided a written statement describing the events leading up to the shooting and the shooting itself. (Trial Tr. 415:21-18:7.) Oliver's statement indicated that after K.C. punched B.P., B.P.'s friends "jumped" Oliver and his friends. (Trial Tr. 417:18-20.) Oliver's statement then said that he pulled out a gun to scare the men, but that another man was beating him and grabbing for the gun when it went off. (Trial Tr. 417:20-23.) The statement indicated that Oliver then heard more shots. (Trial Tr. 418:24.) Later that

3

evening on the day of his arrest, Oliver provided a videotaped statement in which he acknowledged receiving a gun from Williams, and reiterated the same basic events as in his written statement. (Def.'s Videotaped Statement.)

E.W. and B.P. subsequently identified Oliver at a police lineup as having been present at the scene of the shooting. (Trial Tr. 429:9-32:18, 487:13-90:20.) Another witness, although unable to identify Oliver in a photo array, testified that after the fight he observed Williams retrieve a gun that Williams's "short" friend had tossed into the street. (Trial Tr. 1096:21-24.) Oliver was the shorter of Williams's two companions. (Trial Tr. 614:4-5.) Although that witness initially stated that he saw Williams shoot Gentles, at trial he conceded that he did not actually see any of the shots fired that night. (Trial Tr. 1115:5-16:24.)

## II. Trial, Conviction, and Sentencing

Oliver and Williams were tried jointly, but before separate juries, in the Supreme Court of New York, Kings County. (Trial Tr. 2.) K.C. agreed to cooperate with the government in its case against Oliver and Williams. (Trial Tr. 987:12-17.) Prior to K.C. taking the stand, both Oliver and Williams sought to preclude him from testifying about the East Coast Mafia Crips, to which the government alleged Oliver, Williams, and K.C. belonged. (Trial Tr. 959:7-64:6.) The court denied these motions, finding the testimony relevant to "explain[ ] what happened and what the day was like and . . . what led to these three people going down the street and . . . two of them having guns." (Trial Tr. 962:24-63:6.)

At trial, K.C. testified that he, Oliver, and Williams were all members of the East Coast Mafia Crips, that Williams was their leader, that they used to hang out and hold meetings, that they hid guns under two trees, and that he had seen guns at their meeting location. (Trial Tr. 971:15-79:14.) Of 121 pages of transcript encompassing K.C.'s trial testimony, thirteen contain

4

at least some discussion of the East Coast Mafia Crips. (Trial Tr. 965:18-1085:18 (including discussion of Crips at 971:18-78:7, 988:12-90:23, 1078:25-79:19).) Although the government had also sought in a pretrial motion to introduce testimony from an expert on gangs, the trial court held the motion in abeyance pending K.C.'s testimony, and the government ultimately never renewed it. (Pre Tr. Hr'g vol. A2, 45:5-14.)

The government made further reference to the Crips in its summation, though each time in the context of explaining the relationship between Oliver, Williams, and K.C., or addressing K.C.'s character. (Trial Tr. 1462:22-23, 1464:9-66:7, 1483:8-18, 1486:9-11, 1492:17-18, 1496:15-17.) During jury instructions, the court advised the jurors, "While you are [sic] heard testimony from [K.C.] that defendants are in fact members of a certain street gang that membership, if you believe it to be true, is not a crime, and should not be held against him, and has no role to play in your deliberations." (Trial Tr. 1625:5-9.)

The court instructed the jury on alternative counts of depraved indifference murder and manslaughter in the second degree; attempted murder in the second degree; two counts of assault in the first degree; gang assault in the second degree[2]; and, criminal possession of a weapon in the second degree. (Trial Tr. 1601:09-04:17, 1616:10-28:09.) On February 27, 2003, the jury found Oliver guilty of manslaughter in the second degree, assault in the first degree (two counts), and gang assault in the second degree. *See People v. Oliver*, 797 N.Y.S.2d 116, 117 (App. Div. 2d Dep't 2005).

---

[2] Despite its name, "Gang Assault in the Second Degree," N.Y.P.L. § 120.06, does not refer to actual gang affiliation. Rather, the relevant element is, "aid[ ] by two or more other persons actually present." *Id.*

The government asked the court to consider Oliver's gang membership when sentencing him, but the judge expressly denied the request, noting that gang membership was not "part of the trial" and that in any event the judge "did not find it persuasive about him being in a gang." (Sentencing Tr. 16:24-25.) The court sentenced Oliver to concurrent sentences of ten years, five years, and three-and-one-half years on the assault charges, and a consecutive term of five to fifteen years for manslaughter, the maximum allowed by law. (Sentencing Tr. 17:11-19:25.)

### III. Direct Appeal

Oliver appealed to the New York State Supreme Court, Appellate Division, Second Department, alleging, *inter alia*, that the court deprived him of his due process rights by permitting the prosecutor to elicit K.C.'s testimony regarding Oliver's gang affiliation. (Def.'s Appellate Div. Br. 17.) The Appellate Division affirmed Oliver's conviction on June 13, 2005, holding that "[t]estimony regarding the defendant's membership in a gang was properly admitted since such evidence was relevant to motive and intent, and explained the sequence of events and the relationship between the defendant and the codefendant, and the complainants." *Oliver*, 797 N.Y.S.2d at 117. The Appellate Division further concluded that the probative value of this testimony outweighed its potential prejudice, and that the trial court alleviated any prejudice to the defendant by providing appropriate jury instructions. *Id.* Finally, the court held that "[t]o the extent that any alleged inappropriate remark remained unaddressed, it was harmless in light of the overwhelming evidence of the defendant's guilt." *Id.*

On August 1, 2005, the New York State Court of Appeals denied Oliver's application for leave to appeal. *People v. Oliver*, 836 N.E.2d 1160, 5 N.Y.3d 808 (2005).[3]

**IV.    *Habeas Corpus* Petition**

In his petition, Oliver asks this Court to reverse his conviction and order a new trial on the sole ground that "over objection, gang testimony was improperly admitted." (Pet. for Writ of Habeas Corpus 2.) Oliver's petition states, "Appellant was deprived his due process right to a fair trial when court[sic] permitted the prosecutor to elicit prejudicial and irrelevant gang testimony, based on prosecutor's[sic] assertions about the shootings that were not borne out by the evidence." *Id.* The envelope containing the petition was postmarked November 1, 2006, (Exhibit J), and received by the United States District Court for the Eastern District's *pro se* office on November 6, 2006. (Gov't Aff. in Opp'n to Pet. for Writ of Habeas Corpus 5-6.)

## DISCUSSION

**I.    Standard of Review**

A district court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), this Court may not grant a writ of *habeas corpus* to a person in custody pursuant to the judgment of a state court on any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication of the claim -

---

[3] Oliver's petition, among other errors, misstates the date that the New York State Court of Appeals denied him leave to appeal as June 22, 2005. (Pet. for Writ of Habeas Corpus 2.)

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" established federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. The state court need not, however, identify the constitutional principle it has applied. "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). "Federal courts recognize a conclusive presumption that, when presented with an express federal claim, a state court's decision rests principally upon an application of federal law even absent any express reference to federal authority." *Reznikov v. David*, No. 05 Civ. 1006 (RRM), 2009 WL 424742, at *3 (E.D.N.Y. Feb. 20, 2009) (citing *Sellan*, 261 F.3d at 314).

Section 2254(d)(1) precludes *habeas* relief unless the state court's application of federal law to petitioner's claim was "objectively unreasonable," *Williams*, 529 U.S. at 409-10, a "higher

threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Review under § 2254(d)(1) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Even if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993)).

## II. Procedural Requirements

### A. Exhaustion

A petitioner must exhaust all state-provided remedies for his *habeas* claim prior to seeking federal review. 28 U.S.C. § 2254(b)(1)(A).

In the Second Circuit, courts follow a two-step exhaustion analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *overruled on other grounds*, *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc); *see also* 28 U.S.C. § 2254(c).

In order to "fairly present" a constitutional claim, a federal *habeas* petitioner must alert the state appellate court that a federal constitutional claim is at issue. *See, e.g.*, *Grady v. Lefevre*, 846 F.2d 862, 864 (2d Cir. 1988); *Rodriguez v. Sabourin*, 274 F. Supp. 2d 428, 433 (S.D.N.Y. 2003).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like

9

> fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

New York's highest court denied Oliver's application for leave to appeal based on the same claim he now asserts in his *habeas* petition. *Oliver*, 797 N.Y.S.2d at 117; *see* (Pet. for Writ of Habeas Corpus 2); *Oliver*, 836 N.E.2d at 1160, 5 N.Y.3d at 808. Oliver fairly presented a federal claim by alleging that he was deprived of his right to "due process." (Def.'s App. Div. Br. 17.) This claim is "in terms so particular as to call to mind a specific right protected by the Constitution." *Daye*, 696 F.2d at 194. Even though neither the Appellate Division decision nor the denial of leave to appeal to the New York State Court of Appeals makes reference to federal statutes or case law, the question of Oliver's due process rights may be deemed adjudicated on the merits by the New York state courts' decisions. *Sellan*, 261 F.3d at 312. Accordingly, Oliver's *habeas* claim is exhausted.

### B. Timeliness

A one-year statute of limitations applies to state prisoners' *habeas* petitions. 28 U.S.C. § 2244(d)(1). District courts may *sua sponte* consider the timeliness of these petitions. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir. 2000). The statute of limitations commences on the date the petitioner's conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. § 2244(d)(1)(A). If the *habeas* petitioner does not seek *certiorari* in the United States Supreme Court, his judgment becomes final for purposes of the AEDPA when the time to seek such review expires - - 90 days after the state court of last resort enters judgment. *Ross v. Artuz*, 150

F.3d 97, 98 (2d Cir. 1998); Sup. Ct. R. 13. If the 90th day falls on Saturday, Sunday, or legal holiday, the petitioner has until the next business day to file his petition. Fed. R. Civ. P. 6.

The New York State Court of Appeals denied Oliver leave to appeal on August 1, 2005. *Oliver*, 836 N.E.2d at 1160, 5 N.Y.3d at 808. Oliver did not petition the United States Supreme Court for *certiorari*; as such, his conviction became final on Monday, October 31, 2005. Oliver's *habeas* petition was not presented to this Court until November 6, 2006. However, under the prison mailbox rule, a *pro se habeas* petition is deemed filed at the moment the petition is given to prison officials. *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001). A court may generally rely on the date of the petitioner's signature and/or notarization to ascertain the date that the petition was delivered to prison officials. *See Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006); *Harris v. Senkowski*, 298 F. Supp. 2d 320, 335 (E.D.N.Y. 2004); *Hughes v. Irvin*, 967 F. Supp. 775, 778 (E.D.N.Y. 1997). In this case, however, Oliver's petition is undated and unnotarized. Nevertheless, the Court may accept a prisoner's unrefuted contention as to the date in which he delivered his petition to prison officials. *See Noble*, 246 F.3d at 97-98.

Oliver's petition was postmarked on November 1, 2006, (Exhibit J), which strongly suggests that Oliver delivered his petition to prison officials on or shortly before that date. Assuming that Oliver would attest to timely delivery of his petition if given the opportunity, and out of an abundance of caution, the Court will review his claim on the merits.

### III. Petitioner's Substantive Claim

Oliver alleges that he was "deprived his due process right to a fair trial when [sic] court permitted the prosecutor to elicit prejudicial and irrelevant gang testimony, based on [sic] prosecutor's assertions about the shootings that were not borne out by the evidence."

State trial court evidentiary rulings generally are not a basis for *habeas* relief. *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Flores v. Ercole*, No. 09-CV-602 (DLI), 2010 WL 3951048, at *3 (E.D.N.Y. Oct. 7, 2010). Even if unfairly prejudicial evidence was erroneously admitted at trial, "to amount to a denial of due process, the [evidence] must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)), *abrogated on other grounds by Perry v. N.H.*, 132 S.Ct. 716, 723 n.4 (2012); *see also Vega*, 669 F.3d at 126 (noting that, to obtain *habeas* relief, a petitioner must show that the erroneous admission of evidence "violated fundamental conceptions of justice" (alterations omitted)).

In this case, K.C. testified that he, Oliver, and Williams were all members of the East Coast Mafia Crips, that Williams was their leader, that they used to hang out and hold meetings, that they hid guns under two trees, and that he had seen guns at their meeting location. The trial court permitted the testimony on the basis that it helped explain "what happened and what the day was like and . . . what led to these three people going down the street and . . . two of them having guns." (Trial Tr. 962:24-63:6.) The Appellate Division affirmed the admission of the testimony, finding that it was relevant to motive and intent, and that it helped explain the sequence of events and the relationship between the parties. *Oliver*, 797 N.Y.S.2d at 117. The Appellate Division further applied a balancing test, finding that the testimony's "probative value outweighed its potential prejudice." *Id.*

These state evidentiary rulings nowhere implicate federal law, but even if they did, Oliver has not shown that they were "objectively unreasonable" as required under § 2254(d)(1). Indeed,

12

the appellate division's ruling is in accord with Federal Rules of Evidence 403 and 404, which permit the introduction of character evidence and evidence of prior bad acts, where such evidence is relevant and its probative value is not substantially outweighed by a danger of unfair prejudice. *See Vega*, 669 F.3d at 126 (affirming denial of *habeas* claim where trial court, in admitting contested evidence, "reasonably applied New York law in a manner that was not contrary to or an unreasonable application of United States law or the Constitution."); *see also Flores*, 2010 WL 395048 at *3 & n.6 (finding no objectively unreasonable application of federal law where Appellate Division said it upheld the admission of expert testimony on gang violence because "the probative value of this testimony outweighed any prejudice to the defendant."). Here, Oliver's gang membership provided an explanation for the motivations of the parties, the sequence of events leading to the shooting, and the basis by which Oliver came into possession of a gun. While evidence of Oliver's gang affiliation might have been viewed unfavorably by the jury, a court could reasonably find that its probative value to these factors was not substantially outweighed by a danger of prejudice. In any event, the court provided an unambiguous limiting jury instruction, which juries are strongly presumed to follow. *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006); *see also Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (referring to "the almost invariable assumption of the law that jurors follow their instructions").

Further, Oliver has not shown that the evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125. Multiple witnesses placed Oliver at the scene of the shooting, and Oliver does not dispute that he was involved in the altercation when the shooting occurred. In videotaped and written statements, Oliver acknowledged possessing the gun and

13

having it in his hand the first time it fired. (Def.'s Videotaped Statement.) When the government made reference to the Crips in its summation, it did so only in the context of explaining the relationship between Oliver, Williams, and K.C., or addressing the character of its own witness, K.C. In view of the extensive case against petitioner and the trial court's careful limiting instructions, petitioner has not shown that the introduction of evidence connecting him to the East Coast Mafia Crips was anything other than "harmless," *Howard*, 406 F.3d at 122, let alone sufficiently material to warrant *habeas* relief. *See, e.g.*, *Flores*, 2010 WL 3951048 at *4.

For these reasons, Oliver's *habeas corpus* petition is DENIED.

## CONCLUSION

Petitioner's *habeas corpus* petition is DISMISSED in its entirety. The Court hereby DENIES a certificate of appealability as petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of Court is directed to dismiss this petition, send a copy of this Memorandum and Order to the petitioner, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
July 31, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge